CASS, Respondent, v. THE PACIFIC MUTUAL LIFE INSURANCE CO. of California, Appellant.

(253 N. W. 622.)

(File No. 7535. Opinion filed March 19, 1934.)

*Bailey & Voorhees* and *M. T. Woods,* all of Sioux Falls, for Appellant.

*Roscoe Satterlee,* of Mitchell, for Respondent.

POLLEY, J.  On or about the 17th day of March, 1921, the defendant issued to plaintiff a policy of insurance whereby defendant agreed to pay plaintiff a certain monthly indemnity in case of sickness that resulted in continuous total loss of business time in plaintiff's occupation as manager and supervisor of a tailoring store,

with office and supervising duties only; such payments to continue until the insured engages in a gainful occupation, providing that he was to receive no compensation for the first three months of such disability. During the month of February, 1931, and while this policy was in force, plaintiff became afflicted with a disease known as arthritis, rheumatoid arthritis, some of the medical witnesses called it, while others called it chronic atrophic arthritis. Plaintiff took treatment from a local physician, but the disease developed to such an extent that on the 2d day of March, 1931, plaintiff, acting on the advice of his physician, abandoned his business and entered a local hospital where he continued to take treatments. He received no benefit from such treatment. He then went to Mudbaden, a sanitarium for the treatment of arthritis, some place in the state of Minnesota. He spent some time there, but received no benefit and returned to his home in Mitchell. There he continued under the care of his local physician, but without any improvement, and at the end of three months from the time he had abandoned his business he applied for benefits under the terms of his policy. Such benefits were allowed and paid by defendant for a period of four months, when payments were discontinued. This action on the part of defendant was taken pursuant to a report made by several physicians who had been employed by defendant to make a physical examination of plaintiff to ascertain the extent of his disability. The opinion expressed by these physicians, based upon such examination, was such that defendant refused to pay further benefits, and plaintiff brought this action for the recovery thereof. The case was tried to a jury. Verdict and judgment were for plaintiff. A motion for a new trial was denied and defendant appeals.

The record is voluminous and consists largely of the testimony of medical experts; there being some three or four of such witnesses for each of the parties to the action. So far as the nature, character, duration, and effects of plaintiff's illness is concerned, the witnesses for the different parties differ very little. The principal difference being that plaintiff's witnesses were of the opinion that a person afflicted with arthritis as plaintiff is, is not able to attend to the duties incident to the management and supervision of plaintiff's business, and that he is suffering a continuous total loss of business time; while defendant's medical witnesses expressed the

opinion that plaintiff is able to attend to some of the duties of such business and is not entitled to benefits; one of such witnesses testified that he thought plaintiff is able to work three or four hours per day; another said he thought plaintiff could work three to five hours per day; while a third said he thought plaintiff could work six to seven hours per day. None of these witnesses appear to have taken into consideration the nervous condition of plaintiff nor the constant pain he would suffer while doing such work.

Arthritis is a disease of the joints of the human body. In plaintiff's case it affected practically all the joints in his body except the hips and his spine. These affected joints became swollen, stiff and sore, and at times very painful. This pain is intermittent rather than continuous, but very severe at times and, without any apparent cause, shifts about from one joint to another. Plaintiff is much weakened and easily fatigued. His muscles have become so shrunken that his weight is reduced from 180 pounds to 152 pounds. He suffers from nervousness and loss of sleep. At times he is compelled to resort to opiates for the relief of pain and to induce sleep. His physician advised him to stay away from his business; to stay out in the sunshine and get as much exercise as he can without causing too much pain. One of the physicians testified that arthritis is a germ disease, that the germ creates a poison in the system and causes weakness and fatigue. To quote one of the physicians: "The normal progress of rheumatoid arthritis is over a period of years, commencing as a mild affair and generally growing more severe until it reaches a point where the destructive process becomes quiet and a reparative process takes place to try and overcome the destruction, which is over a period of from several years to a lifetime." Another medical witness testified that arthritis is a disease that its not well understood by the medical profession; that even the cause of it is not known. One of the medical experts called by defendant testified that medical science has not discovered any particular treatment that will cure arthritis. Plaintiff's hearing and eyesight are still good, and he does not appear to have suffered any impairment of his mind.

With few exceptions, plaintiff is up and about part of every day, but never all day. He can walk and frequently walks as far as four blocks. He can drive a car and drives some nearly every day. He is a member of the Kiwanis Club and is a regular attend-

ant at the weekly club luncheons. He was president of the Kiwanis Club and performed the duties of that office. He is a member of the Elks Lodge and held a high office in the local lodge and performed the duties of such office. He enjoys seeing football and basketball games. He made a trip from Mitchell to Scotland where he visited his mother, and from there went on to Tripp and Yankton where he saw football games. He made a trip from Mitchell to Aberdeen where he attended a basketball tournament. He was gone on this trip some two or three days. He did not go alone on any of these trips, but did drive the car part of the time on all of them. He drives out to the Wesleyan University in Mitchell and sees football games and football practice there. He usually sits in his car while viewing these sports.

It is the contention of defendant that a person who was capable of the above enumerated activities is not suffering such disabilty from sickness as to entitle him to benefits under the terms of the policy.

The first assignment argued by defendant is predicated upon the denial by the court of appellant's challenge for cause, to one of the veniremen. This challenge and the ruling of the court are based upon the following proceedings: Counsel for defendant put the following questions to the venireman:

"Q. Mr. Fredine, I want to ask you if before the reporter was called, I did not ask you whether you had some opinion as to the merits of this case and if you did not tell me substantially this, that from seeing Mr. Cass, the plaintiff, about the streets last fall during the month of October, November and December, you had formed an opinion which it would take pretty strong evidence to remove? A. Yes, I replied that I did.

"Q. Mr. Fredine, you say you formed an opinion, did you? A. Yes.

"Q. How did you form the opinion? A. From my observation.

"Q. Of Mr. Cass? A. Of Mr. Cass.

"Q. And would you carry those opinions with you into your deliberations as a juror? A. That is going back to where we were before as to whether it was total disability or partial disability.

"Q. There was a question in your mind at the time you formed this opinion as to whether it was total disability or partial,

is that it? A. Maybe I better state it this way. That I had formed from my observation, an opinion that there was a disability.

"Q. But you didn't know how extensive? A. No.

"Q. And you still do not know how extensive? A. No.

"Q. As I understand, the issue in this case is as to whether this plaintiff has sustained a continuous total disability under the meaning of the policy, you have no opinions then as to whether he is totally disabled or whether he is not? A. No.

"Q. Your only opinion is that he might be partially disabled? A. Yes.

"Q. That is what you referred to in your direct examination as a juror when you said you had an opinion? A. Yes."

The challenge was denied. There was no error in denying this challenge . The juror's opinion went only to the fact that the plaintiff had suffered a disability of some kind. This impression was gained by seeing the plaintiff walking about the streets and it is probable that every one who saw the plaintiff walking about knew at a glance that he was disabled to some extent, but that was not the issue involved in this case. The issue was, had the plaintiff suffered such disability from sickness as to result in continuous total loss of business time within the meaning of the policy; a question that the juror knew nothing about.

■■ Over defendant's objection plaintiff was permitted to recount and explain what his duties had been as manager of a tailoring store, and how much of his time had been occupied in the performance of such duties. This evidence was material and competent. It must be borne in mind that under the terms of this policy plaintiff's right to benefits is not based upon a total disability from sickness to perform any kind of work or to carry on any business, but such disability only as disabled him from performing the duties necessary to manage and supervise his tailoring store. If the performance of such duties required all of his time throughout the working hours of the day, and his disability resulting from sickness was such that he could work but one-half of the day, then he could not perform the duties necessary to manage and supervise his tailoring store, and the defendant would be liable under the terms of the policy. But if it were not shown what these duties are or how much of plaintiff's time each day it would take to perform them it could be plausibly argued that it did not

require more than an hour per day each day of plaintiff's time, and so long as he was able to work an hour per day he could manage and supervise the business and defendant would not be liable.

This evidence was objected to on the ground that it is incompetent, irrelevant, and immaterial, and tends to vary the terms of a written instrument. That this evidence is relevant and material is too plain to admit of any doubt, and it does not, in our opinion, tend to vary the terms of the policy. The clause, "Manager of a tailoring store with office and supervising duties only," does not indicate the length of time nor the amount of work necessary to perform the duties of such position, and plaintiff does not contend that he was so completely disabled that he could not do any work of any kind; therefore, it was competent to show by parol evidence how much time and labor on his part was necessary to perform his duties as manager of his tailoring store.

The court charged the jury, in effect, that under the terms of the policy the defendant would be liable to plaintiff if plaintiff's disability resulting from continuous sickness rendered him unable to perform the substantial and material duties necessary to carry on his business or occupation in the usual manner. The giving of this instruction is assigned as error; appellant contending that if plaintiff's sickness is not such as to render him unable to perform any of the substantial duties of his business or occupation he cannot recover. This is putting a narrow literal construction on the policy, and is contrary to the weight of authority. Insurance policies such as the one sued upon in this action should be and generally are given a liberal construction so as to carry out the intention of the parties when the contract is entered into. The form of policy involved in this case seems to have been in use by defendant for a considerable period of time and has been the subject of litigation on several occasions.

Ability to perform some of the duties of complainant's business, or ability to engage in some other business, is not sufficient to defeat recovery. McCutchen v. Pacific Mutual Life Insurance Co., 153 S. C. 401, 151 S. E. 67; Pennington v. Pac. Mut. Life Ins. Co., 85 Iowa, 468, 52 N. W. 482, 39 Am. St. Rep. 306. In Hetzel v. Pac. Mut. Life Ins. Co. of California, 108 W. Va. 22, 150 S. E. 385, 388, it is said: "The weight of authority supports

the view that provisions in accident policies for indemnity in the event the insured is totally or wholly disabled do not require that the accident shall render the insured absolutely helpless, but such provisions are construed as meaning such a disability as rendered him unable to perform the substantial and material acts of his business or occupation in the usual and customary way."

And in Henderson v. Continental Casualty Co., 239 Ky. 93, 39 S. W. (2d) 209, 211, it is said: "In the policy here involved, the appellee insured the appellant as a freight brakeman. Under our decisions, the clause of the policy here involved had a certain meaning in the law, and that was that the disability was total if the insured was unable to follow his usual occupation, although he might be able to do something else. Hence it follows that, as the appellant was unable to follow his occupation as a freight brakeman because of the disability to his eyes, he was totally disabled within the meaning of his policy."

Other cases to the same effect are collected and reviewed in a note in 79 A. L. R. at page 857. . See, also, Couch on Insurance, § 1670; May on Insurance (4th Ed.). § 522; Joyce on Insurance, § 3031; Kerr on Insurance, p. 386.

There was no error in the instructions given by the court, nor in refusing the instructions requested by defendant. A number of errors are predicated upon the rulings of the court in the rejection and admission of certain testimony. These assignments have been examined, but in our opinion no error is disclosed. We believe the case was fairly tried and that the verdict and judgment are fully sustained by the evidence.

The judgment and order appealed from are affirmed.

All the Judges concur.