FRAZIER, Respondent, v. THE TRAVELERS INSURANCE CO. OF HARTFORD, CONN., Appellant

(287 N. W. 589.)

(File No. 8246. Opinion filed September 8, 1939.)

*H. M. Lewis,* of Hot Springs, for Appellant.

*W. P. Rooney,* of Hot Springs, for Respondent.

ROBERTS, J.  The Travelers Insurance Company issued to Frederick H. Frazier a combined life and disability policy of insurance.  The pertinent provisions of the policy are as follows:

"In accordance with the provisions for permanent Total Disability Benefits, and subject to the conditions thereof, the Company will pay to the Insured a monthly income of Fifty Dollars.

"Upon due proof that since the payment of the initial premium upon this contract, before a default in the payment of any subsequent premium, and before the anniversary of this contract nearest

to the sixtieth anniversary of the date of birth, the Insured has become wholly disabled by bodily injuries or disease and will be continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the Company will waive the payment of any premiums which may fall due on this contract during such disability and will pay from the commencement of such disability and during its continuance the disability income stated on the first page of this contract. The premium so waived and the disability income so paid will not be deducted in any settlement hereunder.

"Independently of all other causes the Company will consider as permanent total disability the entire and irrevokable loss of the sight of both eyes, or of use of both hands or both feet, or of one hand and one foot.

"Pending due proof of a claim hereunder in behalf of the Insured that an existing total disability will be permanent and continue for life, when it shall appear that the Insured had been wholly disabled by bodily injuries or disease and has been prevented thereby from engaging in any occupation or employment for wage or profit for a period of not less than three consecutive months, the Company will grant the aforesaid benefits from the commencement of such disability and during its continuance."

Plaintiff claims that he was totally and permanently disabled so as to be entitled to disability benefits under the terms of the policy by reason of an accident occurring on May 8, 1923. Payments were made by the defendant company from the inception of the alleged injury until November, 1937. This action followed the refusal of the Company to continue the monthly payments. Defendant in its answer admits that plaintiff suffered an injury, but denies that he was totally or wholly disabled within the terms of the policy. The trial resulted in a verdict for the plaintiff, and motion for new trial having been denied, defendant insurance company has appealed.

The appellant claims that the evidence was insufficient to authorize a submission to the jury; that the evidence precludes a finding that plaintiff was wholly disabled and will be continuously and wholly prevented from engaging in any occupation or employment for wage or profit.

The evidence discloses that, prior to his injury, respondent

was employed on a ranch near Newcastle, Wyoming. Thrown by a horse, he sustained a fracture of the third cervical vertebra. In January, 1924, eight months after the accident, respondent was examined by Dr. Geyerman who made the examination for the insurer. This witness testified: "An X-ray at that time of his neck showed he had sustained a fracture of the third cervical vertebra, the third one from the base of the brain down in the neck. There was a fracture in that vertebra which I believe accounted for his condition at that time. His general condition was bad. I mean by that he was weak and that he suffered from a great deal of shock, shock to his nervous system, a condition that is known in medical terms as a traumatic neurosis, profound shock. His nervous condition was clearly discernible to me at that time. His mental condition seemed to be one which made him incapable of continuing on with any occupation by which he might earn a livelihood. I mean by that that the man was unable to continue with the kind of work he could do, the only kind of work he could do, for the reason that he wasn't mentally able to do any more than very ordinary manual labor. I have never seen him at any time since then when I thought he would be able to continue on with physical labor for any length of time. He might do a little work for a day or two or three, but I never thought the man was able to continue to make a living by manual labor. According to my records I examined him in 1925, 1931, 1932 and 1936. He certainly hasn't been any better since my first examination. I would say the man's condition is probably worse after some years than it was in the beginning. I gave him an examination in March, 1936, at the request of the defendant. Then I examined him again in December, 1937, about the time this suit was commenced, at his request. His condition then was practically the same as it had been for some years previous. I never could find that the man was any better as time went on. He seemed to be possibly drifting down hill gradually as the years went by. During the month of November, 1937, from that examination I would say he was unable to do any sustained amount of physical labor. He might be able to do a little occasionally. I think any amount of physical labor, he would be unable to do it, he just couldn't keep it up. If he did it would affect his general condition. In my opinion he should not do any physical work of any kind to any extent. * * * I wouldn't say that it

wasn't possible for him to ride a tractor in 1935. I think if he rode a tractor for any great length of time, say a week or two, if he were able to ride it that long, he would suffer from it. In my opinion riding a tractor was something he should not have done."

Dr. Cramer, who examined respondent in December, 1937, testified that in his opinion the condition of respondent was such "that he could not follow any occupation for any length of time."

There was offered in evidence by appellant to show that respondent was able to engage in an occupation or employment for wage or profit testimony that respondent in the fall of 1935 operated a tractor. There was testimony on behalf of respondent that he could not carry on the usual and ordinary activities of a farmer, and it could be reasonably inferred that he was not fitted for any other vocation. Respondent testified: "After the injury in 1923 I was never able to work. Have never done any work for any length of time. When on the farm was not able to do any chores or anything about the farm. Never did any of the work. Was able to walk around. Never tried to do any work in the field or any work on the farm. I have attempted to put up hay and ride this tractor but found I was not able to. That was in 1935. I had a tractor and hay-cutting outfit and attempted to drive the tractor in 1935. I wasn't able to continue to drive it. At times I was able to drive an automobile. I experienced difficulty in driving it. After I tried to drive the tractor I had an awful pain down my back, across my neck, vomiting, I couldn't stand the jolting. These spells would last a little ways; I would stop and rest and go a little ways again. That was the only way I could ride a tractor and do anything with it. Couldn't continute to ride it. I finally quit trying. * * * In 1935 I didn't cut hay for Stearns and on the Neisham place and for Wheeler. My tractor was used to cut it and also at the Cone place and the Petty place. I tried to ride the tractor at the Cone place and the Petty place but just for an hour or so. I couldn't stand it. I went home and to bed for two weeks. At the other places I would try to ride the tractor, but couldn't; was in misery and pain all the time. I have never rode the tractor or done any work of any kind since 1935. That was the first work I done, the first I tried to do anything."

A witness for respondent testified: "While there Fred tried to run the tractor and I had to take the job on myself. He tried

several times, but couldn't stand it. He couldn't run the tractor over thirty minutes without stopping. He couldn't handle the machine. It tired him considerable. * * * Most of the time he would sit in the car or in the shade of a haystack. I knew it tired him considerable; he complained of his arms aching, and his neck and his back."

The testimony of respondent's wife and neighbors was to the same general purport.

Appellant introduced in evidence the complaint in an action instituted by respondent against the Federal government. The complaint duly verified was filed February 19, 1932. It is therein alleged that during the period of his military service a certificate of war risk insurance was issued to respondent; that he was "totally and permanently disabled" on July 2, 1919; and that he is entitled under the terms of the contract of insurance to disability payments.

The policy in Cass v. Pacific Mut. Life Ins. Co., 62 S. D. 502, 253 N. W. 622, provided indemnity in case of sickness resulting in continuous loss of business time in plaintiff's occupation as manager and supervisor of a tailoring store. The insured suffered from pheumatoid, or chronic, atrophic arthritis, which prevented the insured from performing the duties necessary to manage and supervise his business. This Court declined to construe the terms of the policy in their literal sense, holding that ability to perform some of the duties incident to the business of the insured or ability to engage in some other business was not sufficient to defeat recovery. This construction follows the general trend of decisions in other jurisdictions. The interpretation given to contracts substantially similar to the one in the instant case is stated as follows in an annotation in 98 A. L. R. 789:

"The liberal rule, as shown in the earlier annotations, is that the 'total disability' contemplated by an accident policy, or the disability clause of a life policy, does not mean, as its literal construction would require, a state of absolute helplessness; rather that the disability contemplated means inability to do all the substantial and material acts necessary to the prosecution of the insured's, or, in many instances, any business or occupation, in a customary and usual manner."

The numerous decisions to this effect are brought together in annotations in 24 A. L. R. 203; 37 A. L. R. 151; 41 A. L. R. 1376; 51 A. L. R. 1049; and 79 A. L. R. 857.

■■ Appellant contends that the statement in the verified complaint filed in the Federal Court in an action which was not brought to trial that respondent was totally and permanently disabled in the military service precludes a finding that respondent suffered such disability after the issuance of the policy. While a pleading verified by a party and containing an admission of a material fact in issue may be received in evidence against the pleader in the trial of another action, the admission is not conclusive and may be explained or controverted. H. C. Behrens Lumber Co. v. Lager, 26 S. D. 160, 128 N. W. 698, Ann. Cas. 1913A, 1128; Johnson v. Hawthorne Ditch Co., 32 S. D. 499, 143 N. W. 959. Plaintiff testified: "I did not in that lawsuit claim I was totally disabled in 1932 from injuries sustained in the service. The contents of that petition are not true. The doctor must have turned that in, not me. I never put in nothing like that. I put in what I had on record up there. They were to take the record from Battle Mountain, not from me. The doctors examined me and they put it in if anybody." The jury having found for plaintiff must be presumed to have believed that plaintiff did not know that the complaint contained the allegation in question. We cannot say that plaintiff fully comprehended the allegations of the complaint. It was a question of fact for the jury.

■■ It may be that plaintiff was not disabled from performing some work, but we cannot assent to the contention of counsel that the evidence does not sustain the claim of total disability. There is evidence to the contrary, but the weight of the evidence and the credibility of the witnesses was for the jury and this Court would not be warranted in reversing its finding.

The judgment and order appealed from are affirmed.

All the Judges concur.