EMPLOYERS LIABILITY ASSUR. CORPORATION, LIMITED, *v.*
FARQUHARSON.

(*Jackson,* April Term, 1945.)

Opinion filed June 30, 1945.

Rehearing denied August 22, 1945.

644

WALTER P. ARMSTRONG, of Memphis, for plaintiff in error.

LUCIUS E. BURCH, JR., of Memphis, for defendant in error.

MR. JUSTICE NEIL delivered the opinion of the Court.

This suit was instituted in the Circuit Court of Shelby County by the defendant in error to recover total disability benefits under a policy issued to him by the plaintiff in error. We will hereafter refer to the parties as they appeared in the court below. There was a trial to a jury upon issues properly tendered in the pleadings, resulting in a verdict for the plaintiff. The trial judge overruled a motion for a new trial, whereupon an appeal was prayed and granted to the Court of Appeals. That Court in an exhaustive opinion overruled all assignments of error and held that the plaintiff was entitled to recover on said policy as a matter of law; that the trial judge was not in error in overruling defendant's motion for a directed verdict, but should have sustained the plaintiff's motion for peremptory instructions at the conclusion of all the evidence. In overruling said motion it was the opinion of the learned trial judge that plaintiff was entitled to recover as a matter of law. This was concurred in as above stated by the Court of Appeals. We granted *certiorari* and the case has been ably presented by counsel, both in oral argument and elaborate briefs.

The defendant has filed fifteen assignments of error, many of them relating to errors committed by the trial judge in charging the jury. The first and principal error complained of here is: "that the Court of Appeals erred in holding that under the undisputed facts the plaintiff was entitled to recover as a matter of law." It is insisted that this was error because "the undisputed facts show that the plaintiff was not continuously and wholly disabled and prevented from performing any and every kind of duty pertaining to his occupation during the period for which he sued for disability benefits."

The policy in question had three classifications of disability. The provisions were as follows:

"Total Loss of Time—Total Disability—Single Weekly Indemnity. If such injuries independently and exclusively of all other causes shall within thirty days from the date of accident continuously and wholly disable and prevent the Insured from performing any and every kind of duty pertaining to his occupation, the Corporation will pay so long as he lives and suffers such disability weekly indemnity at the rate of the single weekly indemnity hereinbefore specified.

"Partial Loss of Time—Intermediate Disability— Three-Fourths the Single Weekly Indemnity. If such injuries independently and exclusively of all other causes shall within thirty days from the date of accident, or within thirty days following continuous total disability, continuously disable and prevent the Insured from performing a major portion of the daily duties pertaining to his occupation, the Corporation will pay during the period of such disability weekly indemnity at the rate of three-fourths ($\frac{3}{4}$) of the single weekly indemnity hereinbefore specified, not exceeding fifty-two (52) consecutive weeks.

"Partial Loss of Time—Partial Disability—One-Half the Single Weekly Indemnity. If such injuries independently and exclusively of all other causes shall within thirty days from the date of accident, or within thirty days following a period of continuous total or continuous intermediate disability, continuously disable and prevent the Insured from performing one or more material daily duties pertaining to his occupation, the Corporation will pay during the period of such disability weekly indemnity at the rate of one-half ($\frac{1}{2}$) of the single weekly indemnity hereinbefore specified, not exceeding two hundred (200) consecutive weeks.

"Indemnity for intermediate and partial disability, combined, shall not be payable in excess of two hundred (200) consecutive weeks."

It appears that following the date of issuance of the policy several riders were attached to it, relating to "change of occupation," etc., the last being Number 7, which shows the occupation of plaintiff as "traveling representative, traveling in Michigan and Indiana, employed by the Continental Hospital Corporation," etc.

At the time plaintiff was injured (February, 1938), he was employed as a traveling salesman by Geo. S. May Company. He traveled over fourteen southern states for this company.

The policy sued on is strictly an occupational policy and indemnifies the insured against disability which will prevent him from performing any and every kind of duty pertaining to his occupation. It is important therefore that we consider the nature of plaintiff's occupation as well as the extent of his injuries.

At the time plaintiff was injured in an automobile accident, he worked out of Atlanta, Georgia, and traveled almost exclusively by automobile. The May Company

is a business management organization. The duty of the plaintiff was to contact business men throughout the South and suggest improvements in their methods of doing business. If the manager or proprietor of a business contracted for the service, the company would send an expert to supervise his entire business structure as well as his methods of doing business. The plaintiff did not undertake to give any such advice except in a very limited way. His salary, including commissions, averaged about $450 per month.

In February, 1938, while driving his car in the State of Louisiana, he suffered serious and painful injuries to his right leg and hip. As a result of these injuries he was confined in a hospital for three months where he was attended by three physicians. During this period he was in what is called "a Bradford Frame" with a wire through his knee for continuous traction. He was later taken to a hospital in Michigan where he was confined for a period of five months.

In February, 1941, an orthopedic surgeon, Dr. Alfonse Meyer, who was employed by the defendant insurance company, made a careful examination of the plaintiff and diagnosed the injury as "compound comminuted fracture of the right femur, with slight shortening." He further found that there was some atrophy of the right thigh and that the knee permitted only thirty per cent of motion inflection; that his "chief disability, as I view the case, lies in the loss of motion of his right knee joint. Of course, he cannot drive an automobile with only thirty per cent of movement in the knee; that there were other types of work other than traveling in an automobile which he could perform." It was his final conclusion that plaintiff had reached his maximum point of improvement unless some type of operation is performed.

Dr. Meyer gave it as his further opinion that the plaintiff might be able to drive an automobile "with the aid of special appliances."

Another witness for defendant, Dr. Boyd, examined plaintiff at the time of the trial and stated, "There is considerable damage to the extended muscles of the thigh and limitation of motion in the right knee; that he still suffered pain and, while an operation to lengthen the tendon might be successful, it was attended with danger."

The plaintiff testified that he received "a compound comminuted fracture of the right femur, and an oblique fracture, or a crack in the cervical neck of the femur," and other injuries. He fully explained the result of this injury, contending that his hip was not normal and he has a dull ache; he found great difficulty in getting his leg in a "comfortable position," stating: "I have to have a foot rest set at my desk to enable my foot to rest on the foot rest, and if that is not provided for me I soon have a dull ache; I get a terrible soreness through here (indicating the region of what he called the tail bone), and I cannot sit for twenty-five or forty minutes without getting up and stretching my leg and I have to constantly do that."

Since the accident the plaintiff has made automobile and train trips to various cities, but has not driven a car himself. On cross-examination he was asked about various types of work he might perform, such "as accounting and running a drugstore" as well as other occupations. He admitted he had taken a course in general accounting and that he was also a registered pharmacist in Michigan. He went fishing occasionally and sat in a boat.

There is evidence to the effect that automobiles may be equipped with special appliances to enable persons

with defective limbs, or without a limb, to drive an automobile. A witness, Mr. Snell, testified as an expert that it was entirely feasible to equip an automobile for the plaintiff. He admitted, however, that if the driver suffered pain, he could not drive a car.

Both in oral argument and on his brief, the plaintiff's counsel has urged upon us the fact that he cannot drive an automobile in his present condition, and for this reason he is unable to perform the material duties pertaining to his occupation, and is totally and permanently disabled within the meaning of the policy.

The defendant, while not conceding this to be true, contends that the policy does not indemnify the insured against continued physical discomfort; that he could travel by train, by bus, by taxicabs, and could travel from place to place by employing a chauffeur; that his inability to drive an automobile is not determinative of his right to recover. It is further insisted that under the admitted facts the plaintiff has only sustained a partial disability. It is pointed out that he is now employed by Plough & Company of Memphis at a salary of $225 per month; that his duties are clerical, and he goes back and forth to work on a street car or bus, walks out to lunch, and sits on a cushion while he is working.

As said before, this is an occupational policy. The Court of Appeals construed it as a contract protecting the insured against disability to perform the peculiar duties of a traveling salesman for his last employer, the George S. May Company. We think this is a mistaken view.

When the policy was issued the insured was described therein as a pharmacist. Later a rider to the policy was executed describing him as a traveling salesman. An additional premium was exacted of him. Then it is

shown by another rider that he resumed business as a pharmacist and we presume the premium was reduced. Again he obtained employment as a traveling salesman, this time for the Continental Hospital Corporation, and a rider was executed showing this change. Later insured changed employers, but not the character of employment, and began traveling for the George S. May Company, for which concern he was working when hurt. No rider was thought necessary by the parties and none was issued to cover this last change.

Thus it seems to us the parties themselves construed their contract as protecting insured against disability to perform the duties of a traveling salesman generally, not as special protection in the service of a particular employer.

Their course of conduct was inconsistent with any other theory. When the insured traveled for the Continental Hospital Corporation his territory was limited to Michigan and Indiana. When he traveled for the George S. May Company his territory was fourteen southern states. Plainly this change from the former employment to the latter, covering this greatly increased territory, necessitated this greatly increased travel, appreciably increasing the risk of injury to the insured. Had the parties understood the policy merely to cover insured while traveling for the Continental Hospital Corporation in two states, not as covering him as a traveling salesman comprehensively, a rider would doubtless have been demanded by insured for his own protection and some additional premiums would doubtless have been demanded by defendant. Such had been the nature of their previous dealings.

We go back to the relevant obligations of the insurer

in the policy and last rider as heretofore set out. The headings of the obligations are these:

"Total Loss of Time—Total Disability—Single Weekly Indemnity.

"Partial Loss of Time—Intermediate Disability— Three-Fourths the Single Weekly Indemnity.

"Partial Disability—One-Half the Single Weekly Indemnity."

■ The plain intent of the parties, manifested as above, was to secure insured against loss of working time or earning time as a traveling salesman. Against total loss of time and partial loss of time. To make the contract reflect this intent the body of each of the previously quoted paragraphs must be construed in connection with its heading and dominant force given to the latter. Indeed, such interpretation is necessary to make sense out of the contract.

■ The first paragraph, for instance, in its body, provides that total loss of time ensues or total disability exists when insured's injuries disable and prevent the insured from performing any and every kind of duty pertaining to his occupation. We take it that *any* and *every* as here used mean *all*. Otherwise the language used would be ambiguous, not to say paradoxical. *Any* means one or more of a group. *Every* means the entire group without exception. If any and every are not taken to mean all, we have words which define total loss of time or total disability as inability to perform a single duty and words which define that condition as inability to perform the whole of the duties. The insurer certainly did not mean to compensate as for total disability a slight injury which might prevent the insured from performing some trivial and immaterial duty. The insured did not mean to forego a claim for total disability if, after

injury, he was still able to perform some trivial and immaterial duty.

Ambiguities likewise exist in the second and third paragraphs. The heading of the second paragraph indicates that it was intended to cover partial loss of time. The language used in the body of the paragraph describes a condition which might and probably would entail a total loss of insured's working time, namely, injuries which "disable and prevent the insured from performing the major portion of the daily duties pertaining to his occupation." Such injuries would almost certainly involve a total loss of time.

A similar ambiguity exists in the third paragraph which undertakes to provide compensation for partial disability of less degree. It says the insured shall be compensated as for such partial disability if his injuries are such as to prevent him "from performing one or more material duties pertaining to his occupation." The cases quite generally recognize that a single disability may be so material or essential to the pursuit of an occupation as to render one totally disabled in that capacity. Inability to perform one or more material duties may be wholly inconsistent with partial disability or partial loss of time. *Gross* v. *Commercial Casualty Ins. Co.,* 90 N. J. L. 594, 101 A. 169; *Metropolitan Casualty Ins. Co.* v. *Cato,* 113 Miss. 283, 74 So. 114; 7 Couch on Insurance, pp. 5768-9.

The trouble with this policy is that the insurer has defined the terms total disability and partial disability each in two ways. One way in the heading of the obligations, another way in the body of the obligations. This Court has not heretobefore considered a policy like this one.

In the heading of the first obligation "Total Loss of Time—Total Disability," total loss of time is followed by a dash (—) and total disability. The dash so employed indicates that the words immediately following it are repetitive and equivalent to the words immediately preceding it, the latter words being used by way of emphasis. The heading of the paragraph means that the insurer regards total loss of time and total disability as the same and undertakes to pay the single or full indemnity for such injuries as result in that condition. The body of the paragraph may be construed to mean that the insured will not be paid such indemnity if, after injury, he can still perform some of the minor duties of a traveling salesman, although he cannot perform material duties.

Likewise the headings of the second and third obligations indicate that the insured would be regarded as partially disabled when his injuries occasion merely a partial loss of time. In the body of these paragraphs, however, as we have shown, conditions which may bring about a total loss of time are set forth as constituting partial disability.

In addition to the construction we have placed upon this paragraph of the policy, we are furthermore of opinion that "total permanent disability" in the instant case could be total loss of working time for a more or less indefinite period, or, to put it in different phraseology, that his disability is of such a nature that he is physically unable to substantially perform all the duties that are essential to his work as a traveling salesman. This construction is not in conflict with the Court's opinion in *Pacific Mutual Life Ins. Co.* v. *McCrary*, 161 Tenn. 389, 32 S. W. (2d) 1052; neither does it conflict with *Harrison* v. *Life & Accident Ins. Co.*, 167 Tenn. 394, 70

S. W. (2d) 24. In the latter case the Court undertook to define "total disability" and "partial disability" as set out in the policy contract. The terms of the policy are not copied in the opinion. Neither is any reference made to the facts upon which the insured claimed "total disability." The opinion, therefore, must be restricted to the facts of that case. If it is thought to be at variance with what we have said in this opinion, then it must be modified to that extent.

■ ■ Where a contract of insurance indemnifies the policy-holder against total permanent disability from performing his occupation or profession, his right of recovery depends upon the nature of the duties called for and the extent of the injury which disables him from substantially carrying on his work in usual and customary manner. What would be total disability in one case might be partial in another, and in some cases no disability at all. By way of illustration, a surgeon who loses a hand would be totally disabled, while a diagnostician sustaining the same injury would not be disabled at all from carrying on his profession. So that, regardless of the occupation or profession covered by the policy, whether it be a surgeon, lawyer, plasterer, or salesman, the question of total permanent disability or partial disability is generally one of fact to be decided by the jury in the light of a proper interpretation of the terms of the contract.

In *Metropolitan Life Ins. Co.* v. *Noe,* 161 Tenn. 335, 338, 31 S. W. (2d) 689, 690, it was said:

"In insurance parlance the phrase 'totally and permanently disabled' contemplates a physical condition at the time of the claim which reasonably convinces the judging authorities that (a) the subject is then totally disabled, and (b) will so remain for life. *These are issues*

*of fact to be determined on the evidence adduced in each individual case."* (Italics ours.)

Applying the familiar rule that a written instrument is to be construed against the party preparing it and all ambiguities resolved against that party, we take the meaning of the terms total disability and partial disability to be that which the headings of these paragraphs indicate. That is to say, total disability is such disability as will result in a total loss of the insured's working or earning time as a traveling salesman, and partial disability such disability as will only result in a partial loss of his working or earning time.

The questions then to be decided in this case are these: Were insured's injuries of such a character as to bring about a total loss of his working or earning time as a traveling salesman, or were they of such a character as to bring about only a partial loss of such time? If of the latter character, were the injuries of a degree that would entitle the insured to payment under the second obligation or under the third obligation—three-fourths or one-half of the single indemnity? We think he should be paid three-fourths or one-half of full indemnity whichever proportion more nearly corresponds with the proportion of which insured's earning power is as a traveling salesman is reduced.

Upon the evidence heretofore set out and other evidence in the record, we do not think either party is entitled to a directed verdict. We think that reasonable men might differ upon this evidence as to whether the insured is so injured as to totally disable him from pursuing the avocation of a traveling salesman or to partially disable him in that activity. We think this is a question for the jury. Under its pleadings the insurer is

of course entitled to question the right of the insured to any recovery at all.

On the trial in the circuit court the jury returned a verdict in favor of the insured for full indemnity. In submitting the case to the jury, however, the trial judge used this language:

"If, gentlemen of the jury, you find from the preponderance of the evidence that the plaintiff has been wholly and continuously prevented and disabled from performing any of the duties of his occupation at the time he was injured, then you should find for the plaintiff."

This instruction was of course erroneous. His Honor should have said "prevented and disabled from performing any of the material or essential duties of his occupation." It is true that in another place the court correctly charged the law on the subject as laid down in *Pacific Mutual Life Ins. Co.* v. *McCrary*, 161 Tenn. 389, 32 S. W. (2d) 1052, but the instruction quoted was in the latter portion of the charge and tended to the confusion of the jury. A request substantially correct and seasonably tendered by way of correction was refused. It was clearly reversible error to have permitted the case to go to the jury under an instruction that they could find the insured totally disabled if he was disabled to perform any of his duties, no matter how trivial.

Since we regard this policy as covering the insured as a traveling salesman, not as a traveling salesman for the Geo. S. May Company, it was error to admit evidence about the rules and requirements of that company as to the physical condition of its employees. If we should hold this evidence competent the result would be that the requirements of Geo. S. May Company as to the physical fitness of its employees would, at least in a large measure, determine the question of total perma-

nent disability of an injured employee rather than the terms of the insurance policy. Such a contract was certainly not within the contemplation of the parties under the policy as originally issued, or under any rider subsequently attached thereto. The assignments of error making this point are sustained.

Other errors are assigned which in the view we have taken of the case do not seem to require particular discussion. We have examined the Michigan decisions and find no difference between that Court and this Court in the construction of insurance contracts of the nature of the one before us. There is certainly no difference in the views of the two Courts as to what constitutes total disability. Neither Court has considered a policy exactly like the one here sued on, so far as the briefs disclose.

Under the policy and under the authorities the case resolves itself into this inquiry: Can the insured perform substantially all the material duties of a traveling salesman in substantially the usual manner that calling is pursued, and, if so, to what extent?

Reversed and remanded.