LAUREN, Respondent v. AUTOMOBILE OWNERS'
ASSOCIATION, Inc., Appellant

(92 N.W.2d 659)

(File No. 9688. Opinion filed October 24, 1958)

**Smiley & Clark,** Belle Fourche, for Defendant and Appellant.

**Jackson & Krause,** Lemmon, for Plaintiff and Respondent.

RENTTO, P. J.   In this action the judgment awarded plaintiff hospital expenses and confinement benefits under a policy of insurance issued by the defendant Association. In its answer the defendant admitted some liability under these features of the policy but in each instance in an amount less than the judgment. However, this appeal by the Association questions the judgment only insofar as it allowed confinement benefits for the period from August 4th through September 17, 1956.

The policy in question insured against loss from accidental bodily injury sustained while driving or riding within any automobile, truck or bus for business or pleasure. The benefit provision thereof material to this appeal reads thus:

> "If 'Such Injury' as described in the Insuring Clause, and not hereinafter excepted or for which indemnity is provided in Part Two shall immediately after accident wholly and continuously disable and prevent the Insured from performing any and every duty pertaining to any business or occupation, and as the result thereof is thereby necessarily confined within doors and requires regular visits therein by a legally licensed medical or osteopathic physician or surgeon, the Company will pay for any one accident an indemnity for one day or more at the rate of One Hundred Fifty Dollars ($150.00) per month even for life, so long as such disability and confinement continues."

The insured was in an automobile accident on February 17, 1956, in which he injured his right hip and the right side of his chest. On the same day he was admitted to the hospital at Hettinger, North Dakota, where he re-. mained until February 21, 1956. On that date he was taken by ambulance to the hospital at Bismarck, North Dakota. The X-ray pictures led his doctor to believe that his hip was fractured. Subsequent examination and manipulation caused the doctor to be in doubt as to whether the fracture was old or new. The insured was confined to bed rest with the lower extremity of his right leg in traction. He was released on March 20, 1956 and ordered to be on crutches at all times and not to take any weight on his foot.

At the time of the accident he was living on a stock and grain farm near Bison, South Dakota, which he operated with his son-in-law and hired help. Upon his release from the hospital he returned thereto but because of his injury was unable to do anything in the operation of the farm, except that he consulted with his son-in-law on matters concerning their farm activities and wrote checks in payment of some of the expenses of its operation. From the time of his release until June 6, 1956, he went to see his doctor on three occasions. Some time after this date he was taken by car to Denver, Colorado and Thermopolis, Wyoming to see other doctors. At these places he also took baths which relieved him of some of the pain he was suffering. At the latter place X-rays were taken which indicated that the fracture of his hip was of recent origin and he was advised to have it operated on.

After his return from this trip he was readmitted to the Bismarck hospital on August 4th and remained through September 17, 1956. During this stay an operation was performed on his hip. The injury which made this necessary resulted from the accident of February 17, 1956. After his release from the hospital he remained in Bismarck almost two months as an outpatient to receive daily physical therapy treatments. During all of this time he was on crutches. In the opinion of his doctor he was totally disabled during this period of hospitalization and while an

outpatient. In the course of the trial plaintiff limited his claim for confinement benefits to the periods during which he was in hospital confinement. This appeal concerns only the second period of confinement in the Bismarck hospital.

■ We think it clear that while the insured was in the hospital on this occasion he was necessarily confined within doors. Annotation 29 A.L.R.2d 1427. This apparently is not questioned by the Association but it does contend that it is not liable for such period of confinement because the insured was not continuously within doors from the time of the accident. In our view the policy provision in question does not require such continuity to render a period of confinement compensable.

■ It is to be observed that under this policy the Association agrees to pay benefits so long as such disability and confinement continues. In other words, before the Association is liable for confinement benefits there must be both disability and confinement. This disability in the terms of the policy must be such as to "immediately after accident wholly and continuously disable and prevent the Insured from performing any and every duty pertaining to any business or occupation." Clearly, the requisite disability must be continuous from the time of the accident.

However, the confinement that is essential to its liability is not similarly limited. As to this the policy provides only that it be such that as a result of the injury the insured is "necessarily confined within doors and requires regular visits therein by a legally licensed medical or osteopathic physician or surgeon,". There is no requirement that the confinement be continuous from the time of the accident. This contract was prepared by the Association. Had it intended the limitation contended for, such could have been readily inserted. It did so concerning the disability essential to liability under this provision. Many of the cases in this field involve policies wherein compensable confinement is so described.

The Association also suggests that it is not liable because the injury did not "wholly and continuously disable and prevent the Insured from performing any and

every duty pertaining to any business or occupation,". We think the record compels the conclusion that it did so disable him. In making this contention it is urging that this policy provision be construed in its literal sense which would require a state of absolute helplessness in order for the insured to recover. We decline to so construe this provision.

■ In several cases under total disability provisions of life and accident policies this court has consistently rejected the rule of literal construction. In those cases it has applied the liberal rule which seems to be the rule generally applied in other jurisdictions. These cases are cited in Robinson v. New York Life Insurance Company, 69 S.D. 30, 6 N.W.2d 162. While the language of the disability provisions in this policy differs somewhat from that in the provisions with which this court has been previously concerned, we think it too must be looked at liberally.

The policy states that the requisite disability is such as will "prevent the Insured from performing any and every duty pertaining to any business or occupation,". From this basis the Association proceeds to urge that since the insured was able to perform some of the duties of his farming operation it was not liable under the policy. Or putting it another way, the Association seems to claim that if the insured is able to perform any of the duties of any occupation or business, he is not disabled. We do not agree. It seems to us that the meaning of the phrase in question, which is in the conjunctive, is not that restrictive.

This phrase "any and every kind of duty" was considered by the Tennessee court in Employers Liability Assurance Corporation v. Farquharson, 182 Tenn. 642, 188 S.W.2d 965, 966. That court answered the contentions here made as follows:

> "We take it that **any** and **every** as here used mean **all.** Otherwise the language used would be ambiguous, not to say paradoxical. **Any** means one or more of a group. **Every** means the entire group without exception. If any and every are not taken to mean all, we have words which define total loss

of time or total disability as inability to perform a single duty and words which define that condition as inability to perform the whole of the duties. The insurer certainly did not mean to compensate as for total disability a slight injury which might prevent the insured from performing some trivial and immaterial duty. The insured did not mean to forego a claim for total disability if, after injury, he was still able to perform some trivial and immaterial duty."

Accordingly, a disability under this policy is one that prevents the insured from performing all duties pertaining to any business or occupation. In this connection we should first determine if his diability prevented him from performing all the duties of his occupation as a farmer. In Frazier v. Travelers Ins. Co., 66 S.D. 638, 287 N.W. 589, this court held that the total disability contemplated by an accident policy means the inability to do all the substantial and material acts necessary to the prosecution of the insured's occupation in a customary and usual manner. We have no doubt that the disability here involved comes within that rule. This is so even though he was able to consult with his son-in-law about the operation of the farm and write checks in payment of some of the bills. Penrose v. Commercial Travelers Insurance Co., 75 Idaho 524, 275 P.2d 969. These acts were minor and required but little time and no physical exertion.

The Association urges the further policy provision that the injury must disable the insured as to any business or occupation before it is liable. It stresses the word **any**. This feature of the policy puts it into the class of policies often referred to as of the general type, as distinguished from policies of the occupational type. The latter are concerned only with specified occupations or businesses while the former do not limit the disability to any particular activity. It contends that to be disabled within the terms of this type of policy requires an absolute inability to carry on any vocation whatsoever. That contention assumes the applicability of the literal rule of construction. The prevailing

rule does not accept such assumption. Here again the courts have generally applied the liberal rule.

This, we think, is the reasonable and realistic view. It is also consistent with the rule adopted by this court in construing policies of the occupational type. Under the prevailing view policies of the type here involved are held to mean inability to perform any work for compensation of financial value in the insured's regular business or any other pursuit for which he was qualified and which he would be reasonably contemplated to pursue. Peterson v. Hartford Accident & Indemnity Co., 32 N.J.Super. 23, 107 A.2d 668; Jacobson v. Mutual Benefit Health & Accident Association, 70 N.D. 566, 296 N.W. 545; Schoeman v. Loyal Protective Life Insurance Company of Massachusetts, 239 Iowa 664, 32 N.W.2d 212; Weum v. Mutual Benefit Health & Accident Association, 237 Minn. 89, 54 N.W.2d 20. We think it clear from this record that the insured was disabled within the meaning and intent of the policy which he purchased. The trial court did not err in allowing confinement benefits for the second hospitalization.

Affirmed.

All the Judges concur.