Richard B. KOOKER, Plaintiff, Appellee,

v.

BENEFIT ASSOCIATION OF RAILWAY EMPLOYEES, a corporation, Defendant, Appellant.

Civ. No. 9172.

Supreme Court of North Dakota.

Nov. 5, 1976.

MacKenzie & Jungroth, Jamestown, for plaintiff and appellee; argued by James R. Jungroth, Jamestown.

SAND, Justice.

This is an appeal by the defendant, Benefit Association of Railway Employees, from a judgment entered pursuant to a jury verdict in the district court of Stutsman County, North Dakota, ordering benefit payments to be made to the plaintiff, Richard B. Kooker, as being totally disabled under the terms of the accident insurance policy. The sole issue on appeal is whether or not the trial court erred by giving a certain instruction to the jury.

Mr. Kooker, a brakeman for the Burlington Northern Railroad, purchased an insurance policy from the Benefit Trust Life Insurance Company on January 4, 1962. The policy provided for a lifetime monthly accident benefit to be paid at the rate of $100.00 per month. This rate was to be paid for a continuous period of total disability beginning within twenty days after the accident in question, and continuing for twelve months if the plaintiff was unable to perform every duty of his occupation. (This provision is not an issue in this appeal.) Payments were to continue for life, however, if the injury, independently of all other causes, prevented the plaintiff from engaging in any occupation or work for wages or profit. (This is the critical provision of the policy involved in this lawsuit.)

On September 4, 1971, Mr. Kooker slipped on a boxcar ladder while working and injured his arm. He returned to work but could accomplish his duties only with considerable effort on his part and assistance from coworkers. He stopped working on December 18, 1971. Benefits were paid to Kooker for the September 4th accident for a period of twelve months. At the end of twelve months, the Benefit Trust Insurance Company discontinued payments, claiming Kooker was not totally disabled as defined in the policy. Kooker sued the insurance company, claiming he was totally disabled and was entitled, under the policy, to lifetime accident benefits.

Hjellum, Weiss, Nerison, Jukkala & Vinje, Jamestown, for defendant and appellant; argued by Gerald W. Jukkala, Jamestown.

Testimony was presented in the jury trial that Kooker had suffered 25 to 35 percent permanent impairment of his left arm; that he was no longer able to work for the railroad; that he could not do work requiring strength in the left arm; that it would be possible for him to be employed in a position not requiring strength or lifting, such as car salesman, desk clerk, night guard, or doorman; and that most of those positions would pay $2.00 to $2.75 per hour for a 40- to 48-hour work week. At the time of trial, Kooker's earning capacity as a brakeman for the railroad was $1,402.64 per month. He was 45 years old at the time of the accident, and had a high school equivalency diploma.

The following instruction, excepted to by counsel for the insurance company, was given and is now claimed as reversible error:

"Any business or occupation, in this instance, means any occupation similar to that in which the Plaintiff was ordinarily engaged in [sic] before the disability or an occupation reasonably approximating the same livelihood as the Plaintiff might fairly be expected to follow, taking into consideration the plaintiff's then occupation, his income, training, schooling, age, and all facts bearing upon what work he may fit himself for in a reasonable time."

The jury rendered a verdict in favor of Kooker and judgment was entered directing the payment of lifetime accident benefits under the policy. The insurance company appealed and contends that the jury instruction given, in effect, enlarged the coverage provided for in the insurance policy.

In deciding whether the instruction complained of was properly granted, we must first look at the insurance policy itself. The provision in issue here is a general disability provision, requiring as a condition to obtaining lifetime benefits that the insured be prevented from engaging in any occupation or work for wages or profit. This type of provision is to be contrasted with an occupational disability provision, which merely requires that the insured be unable to perform the duties of his particular occupation in order to collect under the policy.

A majority of courts confronting the issue held that the term "total disability" or the like when used in general disability provisions means that the insured is totally disabled when his condition is such that he is unable to perform the duties of his particular occupation, or of any other occupation for which he is fitted or qualified by education, training, or experience. (21 A.L. R.3d 1155.) These cases are clear in rejecting a literal construction of the provision, which would require a state of absolute helplessness in order for the insured to recover. See, e. g., *Lauren v. Automobile Owners' Association*, 77 S.D. 400, 92 N.W.2d 659 (1958); *Benefit Association of Railway Employees v. France*, 228 Ark. 765, 310 S.W.2d 225 (1958). These courts have also refused to adopt a strict construction that would make it necessary for the insured to demonstrate absolute inability to carry on any vocation whatsoever in order to recover. See *Lauren, supra.* The court in *Aetna Life Insurance Co. v. Spencer*, 182 Ark. 496, 32 S.W.2d 310, 312 (1930), appropriately commented that under such a literal construction "the insurer would be liable in no case unless the insured should lose his life or his mind."

■ The generally accepted view is that the policy provisions must be construed in a reasonable and practical manner, and should not be construed strictly or literally.

■ This court has had only one prior opportunity to construe a total disability provision in an insurance policy, in *Jacobson v. Mutual Benefit Health & Accident Ass'n*, 70 N.D. 566, 296 N.W. 545 (1941). In that case we examined both the liberal and strict views, and held that the more liberal approach would control. We determined that the great weight of authority was that the terms "immediately, continuously, and wholly disable the insured" do not mean a state of complete physical and mental incapacity or utter helplessness, but rather an inability to do all the substantial and material acts necessary to carry on the insured's business or occupation or any business or

occupation in a customary and usual manner. Further, we stated that this inability referred to any business or remunerative vocation for which the insured would be physically and mentally qualified were it not for his disability.

We did not in *Jacobson* prescribe the exact manner in which a trial court was to determine whether or not the insured was unable to follow any other business or occupation. Unfortunately, the term "total disability" defies precise definition, and the law is incapable of creating a standard or formula that will apply in all cases. Defining the term "total disability" is a difficult task in itself and becomes more so when attempted in relation to or in conjunction with the language of the policy, "[if the injury] prevented [insured] from engaging in any occupation or work for wages or profit." A great share of the difficulty may be attributed to the phrases in question which are relative.

Generally words and phrases take meaning from the context in which they are used. But when the "context" itself is relative there is little help. In fact, the problem of determining the meaning is compounded.

■ In truth, the courts that best express the majority view center their definition around the basic premise that total disability is a very relative term which depends largely on the circumstances of the particular case. See *Mason v. Loyal Protective Life Insurance Company*, 249 Iowa 1167, 91 N.W.2d 389 (1958); *Aetna Life Insurance Co. v. Orr*, 205 Ark. 566, 169 S.W.2d 651 (1943). The court in *Aetna* used the example of loss of a toe, which might not affect a teacher or a lawyer but could permanently and totally disable a professional dancer. Determination of whether or not total disability exists is usually a fact question for the jury. *Wilson v. Metropolitan Life Insurance Co.*, 187 Minn. 462, 245 N.W. 826 (1932); *Mason v. Loyal Protective Life Insurance Co., supra.*

The insurer argued and contended strongly that *Jacobson, supra*, did not constitute precedent for this case because there death ensued, whereas in the instant case we have nothing approaching death. Granted this distinction, we nevertheless cannot overlook the principles of law announced in *Jacobson* as to the interpretation and construction of the language in question.

In addition, we are impressed with the number of jurisdictions supporting, recognizing, or following the view that under a general disability provision "total disability" contemplates the inability to perform the duties of the insured's particular occupation or other occupations for which the insured is fitted or qualified. It necessarily follows that the qualifying phrase, "is fitted or qualified," has to be on the basis of education, training, and experience. The jurisdictions following this rule of law are set forth in 21 A.L.R.3d 1155, beginning on page 1166. The number of states adhering to this view is impressive and we have no valid reason to depart from the rule expressed earlier in *Jacobson*. Nevertheless, there are some guidelines that can be added to our analysis in *Jacobson* against which we should compare the instructions given in the instant case.

■ The existence of total disability depends largely on the occupation and employment in which the insured was engaged at the time the policy was issued and when the claim arose. *Benefit Association of Railway Employees v. France, supra*; *Aetna Life Insurance Co. v. Spencer, supra*. In *Travelers Insurance Company v. Stanley*, 117 Ga.App. 445, 160 S.E.2d 876 (1968), a jury instruction was upheld which described total disability as a condition such as to make the insured unable to perform all or substantially all of the duties of his occupation, or any other line of endeavor, business, or occupation as he might be reasonably expected to follow in view of his station, circumstances, and physical and mental capabilities. The court held that such instruction was not harmful to the insurer, but could even have included the provision that other employment open to the insured must approximate the same livelihood as his for-

mer occupation in order for him not to be totally disabled.

 Thus, a jury may properly consider the insured's occupation when the disabling event happened, his training in life, his present physical and mental condition, his age, prior work history and educational background, and all other facts presented by the evidence which may have a bearing on what work the insured could fit himself for in a reasonable time. Income which could be derived from another occupation is an important consideration. The occupation must be remunerative in a fair and substantial sense, not merely nominally, and must provide compensation reasonably comparable with that earned in the insured's former occupation. Couch on Insurance 2d, 53:49, 53:56 (1966).

 Against these general principles we must compare the instruction in the case at bar. The instruction made reference to the insured's occupation, age, income, training, and other facts bearing on what work he could equip himself for within a reasonable time. These are appropriate factors to be considered under the majority view. In substance, the instruction as worded is an accurate description of the majority rule itself which we have adopted. We find that it was correctly given and did not enlarge the terms of the disability policy.

Our holding should not be interpreted to mean that a mere reduction in income will qualify an insured as totally disabled under an insurance policy. Nor are we attempting to establish a fixed percentage below which income cannot drop before it becomes "insubstantial." A professional person earning $60,000 or more per year may be able to endure a more drastic cut in income than a person earning much lower wages as a manual laborer. Yet, by virtue of special training and ability, the professional person may be severely affected by a disability. Clearly, total disability is a relative term. For that reason, its interpretation is probably best entrusted to the jury, whose very purpose is to weigh the particular facts of the case in light of their own knowledge and experience.

The jury instruction given was correct, and we affirm the judgment of the trial court directing payment of lifetime benefits to plaintiff Kooker.

Affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.