Complainant, in the latter part of 1928, bought insurance from the defendant company and there were two policies issued to him, one for $1,000, dated November 21st, 1928, and one for $5,000, dated December 19th, 1928, both containing "total and permanent disability benefit" clauses, as follows:
"If the insured * * * shall become totally and permanently disabled by * * * disease, so that he is and will be prevented thereby for life from performing any work for compensation or profit * * * the Company will waive the payment of all premiums falling due thereafter during such disability of insured."
Complainant claims that he is entitled to the benefit of this so-called "waiver of premium" clause by reason of physical disability which comes within the provisions thereof; that the defendant company refuses these benefits, threatens to cancel the policies in the event that complainant fails to pay the premiums as provided therein, and therefore prays that this court decree that defendant specifically perform its contract and issue "waiver of all premiums" and that it be decreed that complainant "is totally and permanently disabled and was so totally and permanently disabled as of August 25th, 1930; that defendant be restrained from cancelling the policies for non-payment of premiums and be compelled to repay premiums since August 25th, 1930."
The matter comes to me on final hearing without any question of jurisdiction being raised.
Counsel for defendant, in their brief, agree that the following facts, as stated by counsel for complainant in their brief, were established at the final hearing: *Page 184 
"1. That the complainant all his life, beginning at the age of eight, was engaged only in one vocation, that is the selling of newspapers.
"2. That about 1925 he developed his own newspaper route whereby he sold and delivered to his customers day in and day out, except Sunday, both editions of the Atlantic City Press and Evening Union. This business was conducted by himself and was chiefly manual and physical in its nature, in that it demanded his carrying a bundle weighing about fifty (50) pounds on his shoulder, consisting of the newspapers and delivering them on foot at the door of each of his customers. This work performed in all kinds of weather required him to get up at about four or four-thirty in the morning, and demanded his attention until about six or seven in the evening and at this work he averaged a net earning of between thirty-five ($35) and forty-five ($45) dollars per week, with which he was able to maintain his family of wife and six children.
"3. That at the time he obtained the policies in controversy, and up to August, 1930, he was in excellent physical condition and good health.
"4. That since August, 1930, he has performed no work of any nature and has not earned a single penny in support of his family.
"5. That the one attempt he made to assist his two sons in delivering newspapers resulted in his collapse which required his being carried home.
"6. That he is not a malingerer. This is admitted by defendant's doctors, and no charge to the contrary of course is made by defendant's counsel.
"7. That beginning in August of 1930, he developed an extremely painful condition of bleeding hemorrhoids, which forced him to undergo an operation in Philadelphia, and of course stopped him from performing his vocation.
"8. That when he came back to Atlantic City after the operation he experienced the intense pains in his right arm and across his back and he began to experience the fits which occurred on an average of about three or four times a week *Page 185 
for a number of years and now occur about two or three times a week.
"9. That he proceeded to take treatment and to seek relief from various doctors and hospitals. He began by being treated by Doctor Samuel Weiner for about ten months without success. He then went to the Atlantic City Hospital and was there treated first by Doctor Shenfeld, who in turn, turned him over to Doctor Gorson. Doctor Gorson, the nerve specialist, who testified for the defense, caused to be extracted all of the complainant's teeth. No benefit being received complainant then turned to Doctor Mackler (the defense witness) who removed the complainant's tonsils, and finally told him that he could do nothing further for him here and sent him to the Jefferson Hospital in Philadelphia. There he was examined and observed by the various clinics and finally turned over to Doctor Baron who specializes in nervous diseases, and from whom he has now been receiving treatment for a number of years, and to whom he goes for treatment about once a week."
In addition to these admitted facts, the court has before it the appearance of complainant as he testified and as he sat in the court room during the hearing, where his mein, demeanor, attitude and general physical appearance was under close observation, by reason whereof it was disclosed to the court that complainant is physically and mentally unfit and suffers a partial disability in the use of his right arm and shoulder, is nervous, presents a woebegone expression, lacks vitality and vigor. Added to this we have the admissions of all the medical experts that he is not a malingerer and that he does suffer hystaro-epilepsy fits (not true epilepsy) and has so suffered since August of 1930.
It is true that the doctors for the defense say that their examinations of complainant developed no organic or physical condition that, to them, would account for the existence of fits, and there is an inference that their occurrence may be more or less doubtful, by reason of their happening only in complainant's home, with the exception of one occasion, at the office of Doctor Baron, but I am satisfied that they *Page 186 
do occur and base my conclusion on the evidence adduced, aided by the unanimous opinion that complainant is not a malingerer, as heretofore set forth.
All of these elements of the physical condition of complainant brings me to the one question for decision: Is complainant "totally and permanently disabled * * * by disease so that he is and will be prevented thereby for life from performing any work for compensation or profit?"
Before taking up the legal significance of the language used in the waiver of premium clause of the policies, which language forms the basis of the question, let us examine the evidence as to what defense witnesses say complainant "should" be able to do in the condition in which they find him as a result of their examinations.
In the first place, the one person who should know complainant's ability to work is the physician who has been in attendance since other doctors admitted their inability to be of further service to him (see admitted facts No. 9). Doctor Baron says that complainant is absolutely and totally disabled from doing any work for compensation or profit and gives cogent reasons for his conclusions.
The doctors for the defense, with limited opportunity afforded by examinations made in their offices, say that while it is true that complainant's physical and mental condition is such that no one would employ him for compensation that, even so, he could "sell something" and should be able to operate a small newstand or cigar store where the hours were not too much extended, but all admitted that he could not carry on a carry and delivery newspaper route.
My finding of fact, notwithstanding the evidence of these gentlemen, is that complainant, by reason of his physical disability caused by disease, is prevented from doing any work for compensation or profit, and my reason for so finding is that complainant suffers from fits, recurrent two or three times a week which, together with his other infirmities, renders him unfit so to do. It may be that under the constant supervision of a caretaker he could sell newspapers from a newsstand, but a construction of the waiver of premium *Page 187 
clause that would deny its benefits to complainant is not that which the courts of this state have adopted.
Counsel for the defense has submitted the cases in other jurisdictions which appear to have so strictly construed policy provisions, similar to those now under consideration, as to prevent relief to the complainant herein. One of these cases isHurley v. Bankers Life Co., 198 Iowa 1129; 199 N.W. Rep. 343;37 A.L.R. 146, in which case an extensive review of the decisions for and against such a construction will be found, but it seems to me to be useless to review these cases, in view of the decisions of the courts of our own state, wherein a different policy of construction has been adopted, which is more favorable to the assured and binding on this court.
It seems to me that the case of Nickolopulos v. EquitableLife Assurance Society, 113 N.J. Law 450, is controlling. In that case the disability clause provided: "is prevented thereby from engaging in any occupation or performance of any work for compensation of financial value," and in the instant case, "prevented thereby from performing any work for compensation or profit."
The court, in the Nickolopulos Case, said:
"Total disability is largely a relative question. The pertinent question on this phase of the case was: What did this disease do to this individual in the way of disabling him from doing any work of financial value? The answer to that question involves an ascertainment of that individual's training, occupation, capabilities and physical and mental qualifications."
I presume that the examination of witnesses by the defense was with the full knowledge of the law as above quoted and that counsel limited his examination of the physicians to the question as to whether or not the complainant could operate a small cigar store or a newspaper stand, having in mind that the complainant, by training, occupation, capabilities and physical and mental qualifications, could not, even though able to work, pursue a higher calling.
The court further said, in the Nickolopulos Case, that the defendant's contention that the insured "must be absolutely *Page 188 
helpless, has not met with favor in the courts of this state. Such contention finds no support in Doherty v. AmericanEmployers' Insurance Co., 112 N.J. Law 52; 169 Atl. Rep. 652. * * * And neither did the defendant's contention above stated receive the approval of the supreme court in Barbato v.Prudential Insurance Co., 11 N.J. Mis. R. 355;165 Atl. Rep. 872." And summed up its construction of the disability clause in this language: "If an insured has totally lost his ability to earn money in the only way he can, if he is totally unfit and unable to do the only work he knows, he is totally disabled, at least until some new ability to earn his living is created."
In the same case, the court points out that it might be that the insured would be able to sell pencils, "and yet a reasonable mind would reject as absurd the denial that such a person is totally disabled in the ordinary sense of those words as used in this policy," and so in the case sub judice; the mere fact, if it be a fact, that in periods between fits complainant could "sell something" is absurd as a defense to his right to the benefit of the waiver of premium clause, for which he paid an extra premium, under an application "to protect his family."
The rules of construction as adopted in the Nickolopulos Case
are also well expressed in Foglesong v. Modern Brotherhood,97 S.W. Rep. 240, wherein the court said:
"Common knowledge of the occupations of the lives of men and women teaches us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental inertia. We have examples of persons without hearing and without sight following a vocation — some without feet, and some without hands, engaged in business. The achievements of disabled persons are seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade, or follow the business of selling shoestrings or lead pencils, or follow some similar calling, in which instances, under the rule invoked, there would be no disability within the meaning of the policy. In our opinion, such was not within the contemplation of the parties." *Page 189 
Complainant is entitled to a decree, but the question of the relief to be granted will be settled at a subsequent time, on notice of the fixing of the final decree, as per the agreement of counsel at the close of the final hearing.