### First District Court of Jersey City.

MATEY KORDULAK, PLAINTIFF, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, DEFENDANT.

Decided February 16, 1937.

For the plaintiff, *Solomon & Miller.*

For the defendant, *Drewen & Nugent.*

Eggers, D. C. J.   This is an action by Matey Kordulak, the plaintiff, to recover payments on an insurance policy issued by the defendant, The Prudential Insurance Company of America.

The facts as adduced at the trial are substantially as follows.   The policy number 5552309 was issued by the defendant company on August 24th, 1926, and provided among other things, that:

"Total and Permanent Disability Benefits.   Monthly Income —One Hundred Dollars per month, payable at the Home Office of the Company to the Insured [plaintiff] in event of total and permanent disability before age 60, subject to the provisions as to Total and Permanent Disability contained in the policy, as follows:

" 'Disability Before Age 60:   Waiver of Premiums— Monthly Income to the Insured—If the insured shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the

remainder of his (or her) lifetime, and if such disability shall occur at any time after the payment of the first premium on this Policy, while this Policy is in full force and effect and the insured is less than sixty years of age, and before any non-forfeiture provision shall become operative, the Company, upon receipt of due proof of such disability, will grant the following benefits:

" 'Monthly Income to the Insured—the Company will, in addition to waiving premiums, pay to the Insured the Monthly Income specified on the first page hereof under the heading "Total and Permanent Disability Benefits." The first monthly payment shall be made immediately upon receipt by the company of due proof of such disability and subsequent payments shall be made on the first day of each month thereafter. Interest due on any indebtedness under this Policy may be deducted from such monthly income payments.

" 'Such waiver of premiums and such monthly payment shall be additional to all other benefits and obligations under this Policy and the Policy shall be continued in force and the Monthly Installments of Insurance and of Accidental Death Benefit, if any, less any indebtedness, shall become due and payable at death or maturity in the same manner as if the Insured had actually continued to pay the premiums.'

"Proof of Continuance of Disability—Notwithstanding the acceptance by the Company of proof of total and permanent disability, the Insured, upon demand by the Company from time to time, but not oftener than once a year after such disability has continued for two full years, for the purpose of verifying that such disability is actually permanent and not temporary, shall furnish due proof that he (or she) actually continues in the state of disability defined above; provided, however, that such demand shall not be made in the case of the 'Recognized Disabilities' specified above other than the loss of the sight of both eyes.  In case of failure to furnish such proof, no further premiums shall be waived and no further monthly payments shall be made on account of such disability, but any insurance then remaining under this Policy shall be continued in force subject to the payment by the Insured of any premium or premiums, based on such

insurance, the due date of which premium or premiums, as specified on the first page hereof, shall occur thereafter."

The alleged violation of the provisions of the above sections constitute the basis of the present suit. Testimony was introduced to show that plaintiff's occupation at the time of the issuance of the policy was that of a boss plumber sometimes referred to as a master plumber. He came to this country from Austria-Hungary when he was a young boy. His total education consisted of three years schooling in some school abroad. Upon arrival here he obtained employment with a lumber company as a laborer; later performing the same duties for the Standard Oil Company of New Jersey. In due course of time he became a pipefitter's helper, which occupation he followed for some time. After leaving the employ of the oil company he engaged in the plumbing business. He was engaged in that business up to and including the day upon which he allegedly became incapacitated. The proofs disclose he has never engaged in any other occupation other than those above enumerated. The business was conducted from the cellar of his home with the assistance of an occasional laborer whom he had hired. Since his "accident" the business has been turned over to his sons and is being conducted by them. In January, 1935, while installing a range for one of his customers he became weak and felt something happen within him. As part of this job, it was necessary to transport the range up one flight of stairs and while he was engaged in performing that part of the task he felt this strange occurrence. He was taken home and put to bed where he remained for a few weeks because of a pain in his groin. He visited one doctor and after examination by him he visited one, Doctor Perkel. It was disclosed to him that he was suffering from a double inguinal hernia and an apigastric ventral hernia. An operation was advised but plaintiff refused to consider same unless a guaranty could be given; first, that he would survive; and secondly, that the operation would result in restoring him to full and complete health. Such guarantees could not be given and the plaintiff then attempted to pursue his occupation further. This he was unable to do because the hernias resulted in his becoming weak and

exhausted after slight effort. Finding himself unable to follow his chosen line of endeavor he filed his proof of claim with the company in March, 1936. He was thereupon examined on behalf of the company by Doctor Louis Dodson, Doctor Nicholas Feury and Doctor Franklin.

The court therefore finds itself with the following factual questions for its determination:

(1) Whether or not the plaintiff is totally and permanently disabled within the meaning of the policy.

(2) Did the plaintiff act as a reasonable and prudent man in refusing to undergo the operations necessary to alleviate or cure his condition.

The language in the policy is that of the insurer and not the insured. A construction of such language most advantageous to the insured will be adopted, since in the opinion of the court no violence is done to the wording. *Connell* v. *Commonwealth Casualty Co., 96 N. J. L.* 510; 115 *Atl. Rep.* 352.

In the case *sub judice* the words "from engaging in any occupation or performing any work for compensation of financial value" are hereby construed as meaning "from performing any work for compensation of financial value in his regular business and any other pursuit for which he was qualified and which he would reasonably be contemplated to pursue." *Nickolopulos* v. *The Equitable Life Assurance Society of the United States, 113 N. J. L.* 450; 174 *Atl. Rep.* 759.

That the great weight of authority favors this construction of the policy is best illustrated by the following cases: *Nickolopulos* v. *The Equitable Life Assurance Society of the United States, supra; Indiana Life Endowment Co.* v. *Reed, supra; Industrial Mutual Indemnity Co.* v. *Hawkins, 127 S. W. Rep. (Ark.)* 457; *Monahan* v. *Supreme Lodge of Columbian Knights, 92 N. W. Rep. (Minn.)* 972; *Storwick* v. *Reliance Life Insurance Co., supra; McCutcheon* v. *Pacific Mutual Life Insurance Co., 151 S. E. Rep. (S. C.)* 67; *Ursaner* v. *Metropolitan Life Insurance Co., supra; Halperin* v. *Equitable Life Assurance Society, 210 N. Y. Supp.* 720; *Medlinsky* v. *Metropolitan Life Insurance Co., 146 Misc. (N. Y.)* 855.

From the evidence presented it is quite evident that the construction of the words in the policy are sound. The plain-

tiff suffering from three hernias was unable to continue his occupation or in fact to engage in any occupation within the meaning of the terms of the policy; and the court so finds. This despite defendant's contention and some evidence that the hernias are not complete, *i. e.*, that they have not penetrated the external ring.

In reference to point 2, the conclusion of the court is that defendant was not unreasonable in his refusal to undergo the necessary operations to cure his condition. The medical testimony produced on the part of both plaintiff and defendant was almost unanimous in the belief that practically all operations are attendant with risk. Particularly was this declared to be so in reference to operations for hernia. The court is fully cognizant of that portion of the testimony adduced by Doctors Rector, Feury and Dodson wherein they seek to dismiss as negligible the danger involved. Yet upon direct questioning by the court they were not so positive as to the lack of danger. The testimony of the defendant's expert, Doctor Gillespie, was illuminating on this score.

The general rule as enunciated by Mr. Justice Kalisch in *McNally* v. *Hudson and Manhattan Railroad*, 87 *N. J. L.* 455; 95 *Atl. Rep.* 122, to the effect that "where the operation is one not attended with danger to life or health, or extraordinary pain or suffering, and one to which a reasonable man would submit, and if according to the best medical or surgical opinion, the operation offers a reasonable prospect of restoration or relief from the incapacity from which the workman is suffering, and the workman refuses to submit to the operation, then the statutory obligation of the master to compensate him for the incapacity will cease," is not applicable to the case *sub judice* for the reasons heretofore stated; and on the further factual ground, that the element of risk involved in the three operations which the plaintiff would have to undergo, is such, that no reasonable man should be compelled to submit to for the purpose of minimizing defendant's liability under the policy.

The court therefore finds in favor of the plaintiff and awards as damages the sum of five hundred dollars ($500), the amount due under the policy for the months of March, April, May, June and July, 1936.