ELLA WOODROW, PLAINTIFF-RESPONDENT, v. THE TRAV-
ELERS INSURANCE COMPANY, A CORPORATION, DE-
FENDANT-APPELLANT.

Submitted May 27, 1938—Decided September 16, 1938.

For the plaintiff-respondent, *Irving M. Lichtenstein.*

For the defendant-appellant, *Bleakly, Stockwell & Burling.*

The opinion of the court was delivered by

WELLS, J.   This is an appeal from a judgment entered in the Supreme Court, Camden Circuit, in favor of the plaintiff, Ella Woodrow, and against the defendant, The Travelers Insurance Company, hereinafter called the Insurance Company, in an action for recovery of death benefits.

In 1925 the Insurance Company issued to the Great Atlantic and Pacific Tea Company, hereinafter called A. & P. Company, as employer, a group insurance policy contracting to pay certain benefits upon the death or incapacity of employes.   Pursuant to the terms of the master policy, individual certificates were issued to the employer, for delivery to the employes, setting forth the amount of coverage, the name of the beneficiary, and other pertinent data.

One Charles Woodrow, deceased husband of the plaintiff, was employed by the A. & P. Company for some twenty years up until January 14th, 1935, at which time he had served as a store manager for approximately five years. Pursuant to his employment and under the terms of the master policy, Mr. Woodrow received two insurance certificates, one in the amount of $1,000 and the other in the amount of $3,000. The plaintiff, Ella Woodrow, was the beneficiary named in each of these certificates.

One of the terms or conditions of the master policy, equally applicable to the individual certificates, was as follows:

*"Termination of Insurance*—The insurance of any employe covered hereunder shall end when his employment with the Employer shall end except in a case where at the time of such termination the Employe shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit. In such case the insurance will remain in force as to such Employe during the continuance of such disability for the period of three months from the date upon which the Employe ceased to work and thereafter during the continuance of such disability and while this policy shall remain in force until the Employer shall notify the Company to terminate the insurance as to such Employe. Nothing in this paragraph contained shall limit or extend the Permanent Total Disability Benefit to which an Employe shall become entitled under this policy."

On May 19th, 1935, four months after the cessation of his employment with the A. & P. Company, Mr. Woodrow died, the cause thereof being given as "dilatation of the heart, tubular nephritis." The plaintiff called upon the defendant Insurance Company for payment of death benefits, and upon its refusal this action was started. The allegation of the complaint is that Mr. Woodrow, by reason of disease, was "wholly disabled" from engaging in any employment for wages or profit * * * at the time his employment ceased, which condition continued until the time of death.

Upon trial, evidence was introduced by both parties as to the decedent's disability, which will be later discussed. Upon

the refusal of motions for nonsuit and directed verdict, the case was submitted to the jury and a verdict returned for the plaintiff. From the judgment entered thereon this appeal is taken.

The defendant-appellant generally relies upon three grounds of appeal: (1) that certain questions were improperly allowed by the trial court; (2) that the individual certificates of insurance did not constitute a contract between the plaintiff and defendant; and (3) that the evidence did not warrant submission of the case to the jury.

The plaintiff produced as a witness one Covington, who testified that he was well acquainted with the decedent, had observed the decedent at his work, and had himself, some ten years before, been a store manager for the A. & P. Company. Upon the witness being asked as to the nature of the duties of a store manager, the defendant objected on the ground that the experience of the witness was too remote for him to give such testimony.

It cannot be denied that testimony as to the duties of a store manager was relevant and material in consideration of the theory on which this case was tried. Furthermore, the competency of the witness must be evaluated not only upon his earlier experience but also upon his later observations of the decedent's activity. With these factors in mind, and with the further observation that much of the testimony could have been gleaned from mere observation without previous experience, we think that the question was properly allowed.

The defendant also objects to the testimony of a Dr. Schall as to the decedent's physical ability to perform the duties of a store manager, elicited by means of a hypothetical question.

Testimony as to what constituted the duties of a store manager had previously been given by the witness Covington and others, and Dr. Schall had been established as familiar with the decedent's physical condition. Accordingly we think that the question was properly allowed as being predicated on facts "in accordance with the plaintiff's theory of the case and which the evidence tended to prove." *Molnar et al.* v. *Hildebrecht Ice Cream Co. et al.,* 110 *N. J. L.* 246.

It is next contended that the plaintiff's action is defective in being grounded on the individual certificates of insurance, which did not constitute a contract with the defendant Insurance Company.

Our examination of the pleadings and proof reveals that the plaintiff did not rely on the certificates alone, but on such certificates as being issued in accordance with the terms of the master policy, which was itself introduced in evidence. The certificates and the master policy refer to each other, and the terms of the latter conclusively establish that individual employes, holding individual certificates, were the persons intended to be covered by the contract. To divorce the certificates from the master policy would be to err both in fact and law, and we therefore hold this contention of the defendant to be unsound.

The principal question raised by this appeal is as to the action of the trial court in overruling the motions of the defendant for nonsuit and directed verdict and allowing the jury to·determine whether the decedent was "wholly disabled" within the meaning of the insurance contract. In order that this ground of appeal may be adequately considered, it is necessary that the evidence introduced by each party be briefly discussed.

On the plaintiff's part, it was shown that the decedent had worked for the A. & P. Company for twenty years, the last five years in the capacity of store manager. During this time his regular working week comprised six days of approximately eight hours, with extra hours being required at certain times.

During the latter part of 1934 Mr. Woodrow's family and his friends noticed a marked change in his physical appearance and activity. His feet, ankles and legs were swollen to such an extent that he had great difficulty in putting on his shoes and in walking. His skin became greenish and waxy in appearance, and at times there seemed to be no circulation of blood in his hands. He had fainting and vomiting spells, had no appetite and would fall asleep while sitting at the table during his meals. He became easily tired and experienced considerable difficulty in performing his duties at the

store. His brain seemed dulled, and he was forgetful and listless. There were times when Mr. Woodrow seemed to rally, but his decline in health was continuous and increasing up until the time his employment ceased, and from then on until his death.

Dr. Schall, the Woodrow family physician, testified that he had both examined and treated the decedent, and had observed him elsewhere than in his office. The doctor's diagnosis, which he stated was consistent with Mr. Woodrow's outward appearance, was that the man had suffered from chronic nephritis, or Bright's disease, from sometime in 1933. He further testified that this condition was incurable, progressive, and the direct cause of the eventual death four months after his employment had ended with the A. & P. Company.

In response to a hypothetical question the doctor stated that at the time of the termination of his employment with the A. & P. Company (January 14th, 1935) and up until the time of his death (May 19th, 1935), Mr. Woodrow was not capable of doing a hard day's work, and that he was unable to perform the duties required in connection with the management of an A. & P. Company store. There was testimony that after leaving the A. & P. Company, Mr. Woodrow did some selling and soliciting from door to door, and over a period of about three months assisted one Albertson to establish a grocery department in his store and that his services were satisfactory to Albertson. On the other hand there was testimony that decedent undertook this work because of necessitous circumstances and that his physical condition grew worse daily, and that the work was irregular and performed only with great difficulty and distress and with small financial return.

The defendant called upon employes of the A. & P. Company to testify that they had observed no physical decline in Mr. Woodrow; that he had not missed any time at his work up until his discharge and that he was discharged, not because of physical disability, but because of inefficiency and certain irregularities in his accounts.

We think that even if the decedent was discharged by the A. & P. Company for inefficiency and irregularities, as alleged by the defendant, and not because of physical disability, it would not be determinative under the terms of the insurance contract. The phrase used is "termination of employment," and there appears no requirement that such termination must result from the alleged disability in order that a recovery may be effected.

Under the law of this state it was not incumbent upon the plaintiff to prove that the decedent was absolutely helpless in order to sustain a recovery. A person may be able to do some work along lines in which he is qualified, and receive some remuneration therefor, without forfeiting benefits under an insurance policy which prescribes a condition of "total" or "whole" disability. *Nickolopulos* v. *Equitable Life Assurance Society,* 113 *N. J. L.* 450; *Gross* v. *Commercial Casualty Insurance Co.,* 90 *Id.* 594; *Booth* v. *U. S. Fidelity and Guaranty Co.,* 3 *N. J. Mis. R.* 735.

It must be observed that this is not an action involving benefits under an accident policy, but is merely concerned with a physical state which is made a condition of the continuance of life insurance coverage. Furthermore, the question on appeal is not solely of law in relation to contract interpretation, but seeks a determination of whether or not factual testimony was produced of sufficient character to require the deliberations of a jury.

The defendant Insurance Company argues that it should have prevailed as a matter of law, due to proof that the decedent had continued to work for the A. & P. Company until his discharge, and had done other work thereafter until the time of his death. With this we do not agree.

A similar question was considered by the Supreme Court in *Booth* v. *U. S. Fidelity and Guaranty Co., supra,* involving an action for benefits under an accident policy where the insurance contract specified "wholly disabled." The decision was rendered on an agreed state of facts, and the court said: "To say that it did not wholly disable and prevent the insured from the date of the accident from performing his duties,

because he endeavored to perform them, is to put a strained and unfair interpretation upon the term used, and to do violence to the obvious purpose of the contract. The fact that Booth tried to work is not to be taken as conclusive evidence of his ability to do so. * * * Plaintiff should not be penalized for honest efforts to keep going when nature demanded that he desist.

In the Booth case the court was rendering a decision based on stipulated facts; in the present case we are only considering whether the facts presented by the testimony should have been submitted to the jury for determination.

We are of the opinion that the question as to whether the decedent was "wholly disabled" within the meaning of the insurance contract was properly submitted to the jury, and that no error was committed by the trial court in denying defendant's motions for nonsuit and directed verdict.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 16.

*For reversal*—None.