**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1350-23

STEVEN D'AGOSTINO,

    Plaintiff-Appellant,

v.

BILL GOICHBERG and
CONTINENTIAL CHESS
ASSOCIATION,

    Defendants-Respondents.

_____

        Argued October 30, 2024 – Decided November 14, 2024

        Before Judges Mayer and Puglisi.

        On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. SC-000332-23.

        Steven D'Agostino, appellant, argued the cause pro se.

        Leo B. Dubler, III argued the cause for respondents (Law Offices of Leo B. Dubler, III, LLC, attorneys; Leo B. Dubler, III, of counsel and on the brief).

PER CURIAM

Plaintiff Steven D'Agostino appeals from a November 16, 2023 order, entered after a bench trial, dismissing his complaint against defendants Bill Goichberg and Continental Chess Association (CCA) (collectively, defendants) with prejudice. We affirm.

We recite the facts from the trial record. Plaintiff, a chess player, participated in events hosted by the CCA. The CCA, a for-profit chess organization founded in 1968 by Goichberg, organizes chess tournaments throughout the United States. It hosts an annual week-long chess tournament known as the World Open. In order to participate in CCA tournaments, including the World Open, competitors must be members of the United States Chess Federation (USCF).[1] The USCF publishes a rulebook governing all chess competitions.

Relevant to this appeal, Rule 32(b)(1) of the USCF rulebook states, "One cash prize per player, no winner shall receive more than one cash award. The award may be one full cash prize, if a clear winner or parts of two or more cash prizes, if tied with others." Rule 32(b)(3) provides: "all the cash prizes involved shall be summed and divided equally among the tied players unless any of the

---

[1] The USCF, a non-profit organization, governs chess competitions nationwide and maintains a database of members and their rankings.

A-1350-23

winners would receive more money by winning or dividing only a particular prize, [for] which others . . . in the tie are ineligible."

As a USCF member and participant in prior CCA tournaments, plaintiff received promotional mailings advertising the 2017 World Open. Plaintiff paid the required entry fee to participate in the G/10 Championship (G/10), a side event associated with the 2017 World Open.

The G/10 rules stipulated the "higher of [a player's] regular or quick [rating will be] used for pairings and prizes." On the day of the tournament, plaintiff "had a 1329 regular rating, and a 1244 [q]uick rating." Based on his rating, plaintiff participated in the "[u]nder 1900 [s]ection" of the G/10, which awarded $200 for first place, $100 for second place, and $50 for third place. The G/10 also awarded prizes for the top scorers with certain ratings at the time of the event as follows: $130 for under 1700; $110 for under 1500, and $90 for under 1300.

Plaintiff performed well at the G/10 and his score placed him in a three-way tie for second place. The two other players with whom plaintiff tied were higher rated.

At the end of the G/10, tournament director Robert Messenger gave plaintiff a prize check for $120. Plaintiff believed the sum "was way too small"

3

based on the number of prizes he thought he was eligible to receive. Messenger reminded plaintiff of the USCF's "one-prize-per-person" rule. Plaintiff accepted and cashed the $120 prize money check and "did not make an issue out of it at that time."

On the eve of the six-year statute of limitations, plaintiff filed a complaint against defendants in the Special Civil Part, alleging "defendants engaged in [c]onsumer [f]raud when they advertised a 2017 chess tournament offering multiple prizes for the winners of each section" despite "a hidden [and] undisclosed rule that a player can only receive one prize." In his complaint, plaintiff asserted entitlement "to an extra $195 in prize money," and "treble damages of the portion of prizes that [the CCA] did not pay [him], for an additional amount of $585."

The judge conducted a bench trial on November 13, 2023. Plaintiff testified on his own behalf and Messenger testified on behalf of defendants.

At trial, plaintiff explained he sought treble damages under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -229. The judge asked why plaintiff waited almost six years to file his claim and plaintiff responded, "I appreciate everything that the defendant[s] ha[ve] done for the game of chess, [and] I really didn't want to bring this suit." Plaintiff testified he attempted to resolve the

4

matter with defendants before the statute of limitations expired but Messenger said settlement "wasn't an option."

Plaintiff argued the USCF rule allowing one prize per player was akin to a "submerged clause." According to plaintiff, "since that term wasn't disclosed, it's not enforceable, and therefore [he] should be entitled to the full amount of prizes, . . . that [he] earned." Plaintiff further testified the tournament's website failed to state the one-prize-per-player limitation.

As part of his trial testimony, Messenger admitted there was no online version of the USCF rulebook in 2017. However, Messenger explained the CCA "posted rules that said . . . more rules are in the USCF rulebook." Messenger also stated a player could ascertain the rules governing the G/10 by means other than purchasing a physical copy of the [USCF] rulebook. Messenger testified plaintiff could have asked the tournament director about the rules,[2] reviewed a physical copy of the rulebook maintained on site at the tournament, or emailed the CCA inquiring how prize money would be awarded. Additionally, Messenger stated the tournament's website included a notation that "more rules appear[ed] in the USCF rulebook and also appl[ied]."

---

[2] Messenger was the tournament director for the 2017 World Open.

A-1350-23

Messenger gave a detailed explanation regarding the CCA's calculation of prize money based on the three-way tie for second place. According to Messenger, "under [the] rules, you can only win one prize." Thus, Messenger testified the tournament "awarded $120 to each player, which was the correct award under [USCF] rules."

Based on the trial testimony, the judge rendered the following findings regarding the availability of the tournament rules:

> I find that the rules are available, whether or not convenient, but they're available. And maybe you got to spend some money to get them if you want them physically in your hand. But they're available. They're not . . . hiding anything from anybody. And if they are, they're hiding it nationwide, which I find not credible.

Additionally, the judge rejected plaintiff's CFA claim. The judge concluded the prize money did "not fit the definition of merchandise. So it's not consumer fraud."

Plaintiff did not dispute the judge's disposition of his CFA claim but argued, alternatively, that he presented "straight breach of contract damages." Plaintiff argued:

> [I]t's my position that even if [the limiting rules] did exist, which they did not, . . . it would still be insufficient, you have to put the limitations, right here with all the rest of the rules, that's easy to do, one sentence, one prize per person, if that's the limitation,

6

you announce it. They're required to do so by law, they failed to do so.

. . . .

[T]hey announced all the other terms, conditions, limitations, except for the limitation of one prize per person. . . . [i]t's my position under basic common law contract principles, that if you have a term, that's not disclosed, that adversely affects the other party, then that's not enforceable.

Although the judge already rendered his decision, he addressed plaintiff's contract argument. The judge stated:

This is not a common law contract. These are rules of an event, same as a football game or a baseball game. The [National Football League] or the . . . National Hockey League can make up their own rules. That's not a contract. That's a rule. There's a difference between a contract and a rule.

After the judge ruled plaintiff was entitled only to one prize of $120, the parties told the judge that plaintiff received that sum in 2017; plaintiff, however, maintained his entitlement to additional prize money. Based on that information, the judge engaged in the following colloquy with plaintiff:

THE COURT: Well, then I have to change my ruling. . . . I would suggest you look at accord and satisfaction. If you accepted the offer of what his claim is, then you have vacated your argument, sir.

[PLAINTIFF]: I accepted it under protest . . . .

7

THE COURT: It doesn't matter. Acceptance is acceptance. It's like what you cash a check, you may be writing on it under protest, but once you cashed that check, your case is over. And so if you accepted the $120, that's accord and satisfaction.

On November 16, 2023, the judge entered an order dismissing plaintiff's complaint with prejudice for the reasons he stated on the record on November 13, 2023.

On appeal, plaintiff contends the judge improperly dismissed his complaint with prejudice. Specifically, plaintiff argues the judge erred in: 1) finding the CFA inapplicable; 2) determining the prize limitation clause was enforceable; 3) concluding plaintiff failed to present a cognizable common law contract claim; and 4) applying the doctrine of accord and satisfaction to nullify his claims. We reject these arguments.

"Final determinations made by the trial court in a non-jury case are subject to a limited and well-established scope of review." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). Appellate courts "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474,

483-84 (1974)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "That is so because an appellate court's review of a cold record is no substitute for the trial court's opportunity to hear and see the witnesses who testified on the stand." Balducci v. Cige, 240 N.J. 574, 595 (2020) (citing State v. Elders, 192 N.J. 224, 244 (2007)).

Accordingly, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12 (quoting Rova Farms Resort, Inc., 65 N.J. at 484). An appellate court "may not overturn the trial court's fact[-]findings unless [it concludes] that those findings are 'manifestly unsupported' by the 'reasonably credible evidence' in the record." Balducci, 240 N.J. at 595 (quoting Seidman, 205 N.J. at 169).

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Whether a cause of action satisfies the CFA is a question of law we review de novo. See All The Way Towng, LLC v. Bucks Cnty. Int'l., Inc., 236 N.J. 431,

440-41 (2019) (holding legal determinations regarding the applicability, validity, or interpretation of laws, statutes, or rules are reviewed de novo).

We first address plaintiff's argument that the judge erred in dismissing his CFA claim. Plaintiff contends prize money meets the definition of "merchandise" under the CFA.

The CFA provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]
>
> [N.J.S.A. 56:8-2.]

Under the CFA, the term "merchandise" includes "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale[.]" N.J.S.A. 56:8-1(c).

Plaintiff relies on dicta to argue the CFA's broad definition of "merchandise" includes an award of prize money as a service. <u>Bandler v.</u>

Landry's Inc., 464 N.J. Super. 311, 318 n.3 (App. Div. 2020).  Plaintiff argues

the term "services" "no doubt covers gaming entertainment."  Ibid.

However, Bandler addressed preemption, not the CFA.  In that case, we

stated:

> The sole issue presented in this appeal is whether the Casino Control Act (CCA), N.J.S.A. 5:12-1 to -233, which grants the Division of Gaming Enforcement (Division) authority to regulate gaming-related advertising, N.J.S.A. 5:12-70(a)(16), preempts plaintiff's consumer fraud and common law action alleging a casino hotel falsely advertised a poker tournament.  We conclude the action is not preempted.
>
> [Id. at 315.]

Nothing in Bandler supports plaintiff's argument that prize money constitutes a

service satisfying the CFA's definition of merchandise.

Even if we agreed that tournament prize money meets the definition of

merchandise under the CFA, which we do not, plaintiff failed to demonstrate

that defendants acted with knowledge and intentionally omitted referencing the

one-prize-per-player limit.  To establish a CFA claim based on an omission, a

"plaintiff must show that the defendant acted with knowledge, and intent is an

essential element of the fraud."  Cox v. Sears Roebuck & Co., 138 N.J. 2, 18

(1994).

Here, the judge weighed the evidence regarding plaintiff's ability to obtain the rules governing the G/10. Based on the evidence, the judge rejected plaintiff's testimony that defendants intentionally omitted information regarding the tournament rules as "not credible." The judge concluded defendants did not hide the rule stipulating "one player, one prize" and, in fact, the rule was available to plaintiff.

We are satisfied the judge's dismissal of plaintiff's CFA claim was correct. The awarded prize money was not merchandise to support a cognizable claim under the CFA. Nor did plaintiff proffer any evidence demonstrating defendants knowingly intended to mislead plaintiff regarding the tournament prize money.

We next consider plaintiff's argument that the judge improperly dismissed his common law contract claim. Plaintiff asserts "the prize limitation clause" was unenforceable because it "was not presented at all[] and was not visible at all no matter how much of a circuitous route which the tournament participant was willing to travel."[3]

Despite having rendered his decision dismissing plaintiff's complaint, the judge considered and rejected plaintiff's contract argument. Based on the trial

---

[3] Plaintiff cites an unpublished case in support of his contract argument. Under Rule 1:36-3, "no unpublished opinion shall constitute precedent or be binding on any court." See Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 559 (2015).

testimony and evidence, the judge determined plaintiff failed to sustain a claim based on breach of contract. As the judge stated: "These are rules of an event, same as a football game or a baseball game. . . . That's not a contract. That's a rule. There's a difference between a contract and a rule."

Moreover, at trial, plaintiff did not deny his status as an active member of the USCF. Membership in the USCF was a prerequisite to a player's participation in the G/10. As a dues paying member of the USCF, plaintiff was bound by the USCF rules, whether or not he purchased a physical copy or otherwise familiarized himself with the organization's rulebook. Thus, plaintiff was bound by the USCF rule limiting his prize winnings to one prize per player.

We next address the judge's dismissal of plaintiff's complaint based on the doctrine of accord and satisfaction. Plaintiff claims he accepted the July 4, 2017 prize money check "under protest" and, therefore, the doctrine is inapplicable. We reject this argument.

> The traditional elements of an accord and satisfaction are the following: (1) a dispute as to the amount of money owed; (2) a clear manifestation of intent by the debtor to the creditor that payment is in satisfaction of the disputed amount; and (3) acceptance of satisfaction by the creditor.
>
> [A.G. King Tree Surgeons v. Deeb, 140 N.J. Super. 346, 348-49 (Cty. Dist. Ct. 1976) (citing U.S. ex rel

Glickfeld v. Krendel, 136 F.Supp. 276, 282 (D.N.J. 1955)).]

The doctrine of accord and satisfaction applies where:

> dependent upon the offer of the payment of a less sum than that claimed, it is necessary that the money should be offered in full satisfaction of the demand and be accompanied by such acts or declarations as amount to a condition that if the money is accepted it is to be in full satisfaction, and be of such a character that the creditor is bound to understand such offer.
>
> [Peterson v. Hartford Accident & Indem. Co., 32 N.J. Super. 23, 31 (App. Div. 1954).]

Whether accord and satisfaction bars a plaintiff's claim is a fact-dependent inquiry. See Zeller v. Markson Rosenthal & Co., 299 N.J. Super. 461, 465 (App. Div. 1997). We will not disturb a trial judge's fact findings if they are supported by adequate, substantial, and credible evidence. Rova Farms Resort, Inc., 65 N.J. at 484.

Here, after considering the trial testimony, the judge found plaintiff accepted and deposited the $120 prize check as payment in full. Plaintiff proffered no competent or admissible evidence that he marked the check as deposited under protest or otherwise indicated the amount tendered was less than the full amount.

14

Because there is sufficient credible evidence in the record, we are satisfied the judge appropriately applied the doctrine of accord and satisfaction to bar plaintiff's claims against defendants.

To the extent we have not addressed any arguments raised by plaintiff, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1350-23